## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**WEST VIRGINIA LABORERS' PENSION TRUST FUND,
WEST VIRGINIA LABORERS' TRUST FUND,
WEST VIRGINIA LABORERS' PROFIT SHARING
PLAN TRUST FUND,
WEST VIRGINIA LABORERS' EMPLOYERS'
COOPERATION AND EDUCATION TRUST,
WEST VIRGINIA LABORERS' LOCAL 543,
LABORERS-EMPLOYERS BENEFIT PLAN
COLLECTION TRUST, and
PIPELINE LABORERS' EMPLOYERS'
COOPERATION AND EDUCATION TRUST,**

       **Plaintiffs,**

**v.**                             **Case No. 2:10-cv-00131**

**OWENS PIPELINE SERVICE, LLC, and
PAUL OWENS, Individually,**

       **Defendants.**

### <u>MEMORANDUM OPINION AND ORDER</u>

       The issue to be decided in this case is whether employer contributions ("contributions") and deductions from employees' wages ("deductions") which were not paid to certain ERISA[1] plans are "plan assets."  The facts are not in dispute, and the parties agree that this action can be resolved pursuant to Rule 56, *Fed. R. Civ. P.*  The parties consented to have a United States magistrate judge conduct any and all proceedings in the case, including trial, and order the entry of a final judgment.  (ECF Nos. 11 at 3, and 12.)  On May 26, 2010, an Order was entered designating the undersigned to conduct the proceedings and enter judgment.  (ECF No. 13.)  By Agreed

---

[1] Employee Retirement and Income Security Act, 29 U.S.C. § 1001, *et seq.*

Judgment Order (ECF No. 37), judgment was entered against defendant Owens Pipeline Service, LLC in the amount of $152,339.54, plus post-judgment interest.   The determination of whether contributions and deductions are plan assets is critical to deciding whether individual defendant Paul Owens was a fiduciary to the plans and is individually liable for the contributions and deductions.

## Undisputed Facts as to Plan Assets

1. The first four plaintiffs (West Virginia Laborers' Pension Trust Fund, West Virginia Laborers' Trust Fund, West Virginia Laborers' Profit Sharing Plan Trust Fund, and West Virginia Laborers' Training Trust Fund) are "ERISA Qualified Plans" ("the ERISA funds").

2. Individual defendant Paul Owens ("Owens"), on behalf of Owens Pipeline Services, LLC ("the company"), executed Acceptance of Agreements, which bound the company to the terms and conditions of certain collective bargaining agreements.

3. Owens is  and was the sole member of the company.

4. The collective bargaining agreements incorporated into the Acceptance of Agreements are the National Pipeline Agreement and the National Distribution Agreement.

5. With respect to "Fringe Benefit Fund Contributions," the National Pipeline Agreement provides as follows: "All contributions due and owing to any of the fringe benefit funds mentioned in this Article are deemed, and are considered to be, trust funds.

6. With respect to "Pension, Health & Welfare, Vacation, Training Funds," the National Distribution Agreement provides as follows: "A.   Each Employer

signatory to this Agreement . . . agrees to be bound to the terms and provisions of said Trust Agreements and/or bona fide local union negotiated agreements covering the collection of fringe benefits . . ..  B.  All such contributions due and owing to such funds shall be deemed and are considered to be trust funds."

7.  The audit of the company performed by certified public accountants for the period July 1, 2008 through December 31, 2009, revealed (a) discrepancies in hours reported to the plaintiffs and (b) hours reported to the plaintiffs but monies not paid.

8.  The monies not paid consisted of both contributions and deductions.  Unpaid contributions totaled $64,246.70; unpaid deductions, consisting entirely of union dues, totaled $7,631.67.

## Analysis of Plan Assets

### Deductions from Employees' Wages

The United States Department of Labor promulgated a regulation, 29 C.F.R. § 2510.3-102, which provides that unpaid deductions from employees' wages are assets of ERISA funds.  It reads:

> * * * the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.

Courts have confirmed that declaration.  *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 n.1 (11th Cir. 2003); *Central Illinois Carpenters Health & Welfare Trust Fund v. S & S Fashion Floors, Inc.*, 516 F. Supp.2d 931, 934 (C.D. Ill. 2007)   The unpaid deductions were entirely comprised of union dues, which are excluded from plan assets pursuant to the regulation.  Accordingly, the court finds that the sum of $7,631.67,

3

consisting of union dues withheld from employees' wages but not paid to the plaintiffs, is not a "plan asset."

## Employer Contributions

Unlike deductions from employees' wages, there is no Department of Labor regulation which specifies that employer contributions to ERISA funds are plan assets. Moreover, ERISA does not provide a relevant definition of an "asset" for the purpose of an ERISA fund.  Accordingly, cases have developed a general rule that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise.  *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003).  In that case, the plan document defined the fund as "all property of every kind *held* or *acquired* under the provisions of this instrument."  *Id.* at 1014 (emphasis added).  The court ruled that "unpaid contributions, because they are unpaid, are not yet 'held' or 'acquired' by the Fund and therefore cannot be assets of the fund."  *Id.*

In *In re Luna*, 406 F.3d 1192, 1201 (10th Cir. 2005), the Tenth Circuit found the plan documents to be, at best, ambiguous regarding the point when unpaid contributions become plan assets.  The plan documents referred to "monies paid," "contributions . . . made," money "contributed and paid," and contributions "made," all of which "infer that the monies have to be paid into the funds before they become assets of the plan."

In *In re Bucci*, 493 F.3d 635, 642-44 (6th Cir. 2007), the court assumed that unpaid employer contributions qualified as ERISA plan assets, where the trust agreements defined the assets as "all funds received or due to be received by the Trustees in the form of Employer Contributions (including delinquent Employer

Contributions)."   The Sixth Circuit then held that for the purpose of 11 U.S.C. § 523(a)(4), relating to discharge of indebtedness arising out of embezzlement, Mr. Bucci was not a fiduciary because there was no evidence that he was the trustee of the employer contributions.

In *In re Halpin*, 566 F.3d 286 (2d Cir. 2009), the Second Circuit ruled that employer contributions to an ERISA plan did not become plan assets until they were paid.   The court pointed out, "[a]lthough [the employer] and the trustees were free to contractually provide for some other result, nothing in the Plan Documents indicates that they did so."   566 F.3d at 290.   The assets of the Funds were described as "contributions *made* by Employers."   *Id.* (emphasis supplied).

A series of decisions by district courts, including the Southern District of West Virginia, are more on point.   In *Galgay v. Gangloff*, 677 F. Supp. 295, 301 (M.D. Pa. 1987), the court interpreted the Anthracite Wage Agreement which provided: "Title to all the monies paid into and/or *due and owing* said fund shall be *vested* in and remain exclusively in the trustees of the fund."   The court denied the employers' motion to dismiss, writing the following:

> The key to the court's ruling in this situation is the clear and undisputed language of the Anthracite Wage Agreement, to which all defendants are allegedly parties either directly or indirectly, stating that title to all monies "due and owing" the plaintiff fund is "vested" in the fund.

*Id.*

In *Connors v. Paybra Mining Co.*, 807 F. Supp. 1242 (S.D. W. Va. 1992), the late Hon. Charles H. Haden II considered the National Bituminous Coal Wage Agreements ("NBCWA"), which contained language virtually identical to that in *Galgay*.   The decision cites *Galgay* and states: "Little analysis is necessary to conclude that since the

applicable NBCWA language vests title in the Trustees of due and owing contributions, such outstanding or withheld contributions constitute plan assets."  807 F. Supp. at 1246.  "As in *Galgay*, this Court's determination of fiduciary status rests squarely on the unambiguous and mutually agreed upon language in the relevant NBCWAs."  *Id.* at 1247-48.

In *Hanley v. Giordano's Restaurant, Inc.*, No. 94-cv-4696, 1995 WL 442143 *3 (S.D.N.Y. July 26, 1995), the court considered language in a Trust Agreement which provided that contributions required pursuant to the collective bargaining agreement "shall be deemed Trust assets whether or not collected."  The court ruled that if the Trust Agreement was determined to be binding on the corporation, unpaid contributions would be deemed to be plan assets.  *Id.* at *4.

In *PMTA-ILA Containerization Fund v. Rose*, No. 94-cv-5635, 1995 WL 461269 *3 (E.D. Pa. Aug. 2, 1995), the Containerization Agreement provided that "[t]itle to all of the money, property and income paid into, acquired by, or accrued to the fund shall be vested in and remain exclusively in the board of trustees of the fund . . .."  The court concluded that "accrued" and "due and owing" have the same meaning, and ruled that unpaid contributions were plan assets.  *Id.* at *4.

In *NYSA-ILA Medical & Clinical Services Fund v. Catucci*, 60 F. Supp.2d 194, 200 (S.D.N.Y. 1999), the court considered plan document language that stated: "[t]he Fund shall consist of . . . (d) money received from or owing from any other person, corporation, or Fund required to make contributions or payments to this Fund . . .."  It ruled that "money owed to the Fund by a corporation required to make payments to the fund, therefore is a Fund 'asset'."  *Id.* at 201.

In *Laborers' Combined Funds of Western Pennsylvania v. Parkins*, Nos. 01-cv-79 and 80, 2002 WL 31435287 *3 (June 5, 2002), the court adopted the reasoning of *Galgay* and *Paybra Mining*, seeing "no reason to reach a different conclusion about the effect of the language in the Funds' agreements.  I conclude, therefore, that the funds at issue in this case [unpaid contributions] are plan assets."

In *Central Illinois Carpenters Health & Welfare Trust Fund v. S & S Fashion Floors, Inc.*, 516 F. Supp.2d 931, 933 (C.D. Ill. 2007), the court considered plan document language which provided that the Trustees "shall have the power to demand, collect, sue for and receive (i) Employer contributions . . . ."  After a thorough discussion of the cases, the court ruled that absent specific contractual language, deductions, but not contributions, are plan assets.  *Id.* at 937-38.

Finally, in *Railroad Maintenance and Industrial Health and Welfare Fund v. Hacker*, No. 10-cv-3305, 2011 WL 5008311 (C.D. Ill. Oct. 20, 2011), language identical to that in the instant case persuaded the court to deny a motion to dismiss.

In the case before the court, both the National Pipeline Agreement and the National Distribution Agreement state that contributions due and owing to the various funds are considered to be and deemed to be trust funds.  This "due and owing" language, which presumably was purposefully chosen, mirrors the plan document language in *Galgay*, *Paybra Mining*, *Parkins*, and other cases.  It clearly provides that once the various contributions were "due" to the funds based upon the number of hours worked by union employees, the employer "owed" the money and the money was a plan asset.

Three of the four ERISA funds have the same definition of the term "trust fund."  The Laborers' Pension Trust Fund, the Laborers' Trust Fund and the Laborers' Profit

Sharing Plan define it as including "all funds received by the Trustees in the form of Employer Contributions, together with all contracts (including dividends, interest, refunds and other funds payable under such contracts) and investments made by the Trustees, and all income, increments, earnings and profits therefrom, and any and all other funds or property received and held by the Trustees . . .." (ECF No. 38-3, at 18, 22, 27.)   The Laborers' Training Trust Fund defines "trust fund" as consisting of "assets derived from Employer contributions, all investments made and held in the Trust Fund, all income therefrom, both received and accrued, and any other property received and held by this Trust or to which this Trust is entitled." (ECF No. 43-1, at 10.)   Three of the funds appear to define "trust fund" as money actually received, not "due and owing" or accrued.   The Training Trust Fund includes accrued amounts, which is comparable to the "due and owing" language of the National Pipeline and Distribution Agreements. The court deems the definition of "trust fund" in the fund documents to be irrelevant to the instant case, given the "due and owing" language in the National Pipeline and Distribution Agreements, which were signed by Owens Pipeline Service.

The parties addressed *United States v. Jackson*, 524 F.3d 532 (4th Cir. 2008), *vacated and remanded*, *Jackson v. United States*, 555 U.S. 1163 (2009), in their briefs. The court finds *Jackson* to be inapposite.   The court has attempted to locate the specific contractual language in the Jackson ERISA plan documents, without success.   Because the Solicitor General's brief to the Supreme Court (2009 WL 133443) argued that "absent express contractual provisions indicating that the plan's beneficial ownership commences when contributions are due, employer contributions become assets of the plan only when they are actually paid to the plan," the court must conclude that the

contractual language in *Jackson* did not have a "due and owing" phrase or similar provision.

Based on the "due and owing" language in the National Pipeline Agreement and the National Distribution Agreement, the court concludes that the employer contributions not paid by Owens Pipeline Service, LLC to the four ERISA funds were plan assets.

### Role of Paul Owens

The next issue to be addressed is whether Paul Owens was a fiduciary under ERISA because he exercised control over the plan assets.  According to ERISA, a plan fiduciary is one who "exercises any discretionary authority or discretionary control respecting the management of [an ERISA] plan or exercises any authority or control respecting the management or disposition of its assets" or who "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).  The Sixth Circuit has found that "the definition of a fiduciary under ERISA is a functional one, [and] is intended to be broader than the common-law definition" such that the issue of whether one is considered a fiduciary does not turn upon formal designations.  *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir.1999).  Therefore, for purposes of ERISA, a "fiduciary" not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets. See *Mich. Affiliated Healthcare Sys., Inc. v. CC Sys. Corp. of Mich.*, 139 F.3d 546, 549 (6th Cir.1998); *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006).

The Fourth Circuit has ruled similarly.  In *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992), the court wrote that fiduciary duty under ERISA is not an

all-or-nothing concept.  It means "a party is a fiduciary only as to the activities which bring the person within the definition.  * * *  In other words, a court must ask whether a person is a fiduciary with respect to the particular activity at issue."  *Id.*

> In determining whether a person is a fiduciary with respect to the particular activity at issue, a court is required to examine the relevant documents to determine whether the conduct at issue was within the formal allocation of responsibilities under the plan documents and, if not, ascertain whether, in fact, a party voluntarily assumed such responsibility for the conduct at issue.

*Id.*

In *Phelps v. C.T. Enterprises, Inc.*, 394 F.3d 213, 219 (4th Cir. 2005), the Fourth Circuit stated that where an employer "is entrusted with employee funds for remittance to a claims administrator, along with any employer contributions, the employer is acting in a fiduciary capacity under ERISA" (citing *Broadnax Mills, Inc. v. Blue Cross & Blue Shield of Virginia*, 867 F. Supp. 398, 405 (E.D. Va. 1994).

The individual defendant Paul Owens was the president and sole member of Owens Pipeline Service, LLC.  On May 21, 2011, the plaintiffs took the deposition of Paul Owens at which he testified that it was his decision on who to pay and who not to pay.  (ECF No. 38-1, Ex. A, at 15 [citations are to pages of the exhibit, not the deposition transcript pages].)  He admitted that he was aware of how the company was supposed to withhold money and pay it to a trust fund, and that he was the person who decided what obligations to pay.  *Id.* at 16.  Owens was the only person with signature authority on the checking account.  *Id.* at 19.  He was the one with authority to make decisions about Owens Pipeline, "100%."  *Id.* at 20.  The West Virginia Articles of Organization of Owens Pipeline Service, LLC lists Owens as the only organizer; the company is "member-managed," with Owens listed as the member manager.  (ECF No. 38-2.)  He confirmed

10

that from May of 2009 to February of 2010, he decided to make payments on a piece of equipment.   (ECF No. 38-1, at 24.)   The court notes that most of the unpaid contributions were due and owing from 2009.

Based on the testimony of Owens, the Articles of Organization, and the signatures on the National Pipeline Agreement and the National Distribution Agreement, the court finds that individual defendant Paul Owens had a fiduciary duty to the four ERISA funds with respect to the employer contributions which constitute plan assets.  The National Agreements provide that each signing employer agrees to be bound by the Trust Agreements; Paul Owens signed on behalf of Owens Pipeline Service, LLC.  As the person with "100%" authority to make decisions about the business and to decide what obligations would be paid, Paul Owens voluntarily assumed responsibility for the failure to remit employer contributions to the ERISA funds.  As the member manager of Owens Pipeline Service, LLC,  the court finds that the individual defendant Paul Owens was a fiduciary with respect to the ERISA funds, and is personally responsible to the four ERISA funds for the unpaid employer contributions.  There is no genuine issue as to any material fact and the West Virginia Laborers' Pension Trust Fund, Trust Fund, Profit Sharing Plan Trust Fund and Training Trust Fund are entitled to judgment as a matter of law.

It is hereby **ORDERED** that the motion for summary judgment filed by the West Virginia Laborers' Pension Trust Fund, Trust Fund, Profit Sharing Plan Trust Fund and Training Trust Fund (ECF No. 38) is granted in part as to employer contributions and denied in part as to employees' deductions for union dues, and the cross-motion for summary judgment filed by individual defendant Paul Owens (ECF No. 40) is denied. The parties are requested to compute the appropriate pre-judgment penalties and

interest as to the employer contributions and to submit a proposed Judgment Order to the court for entry.

The Clerk is directed to transmit this Memorandum Opinion and Order to counsel of record.

ENTER:  November 18, 2011

Mary E. Stanley
United States Magistrate Judge